# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KAIWEE MARTINEZ,

       Plaintiff,

v.                                 No. CIV 11-232 LFG/SMV

SOC LLC, dba SOC LOS ALAMOS, f/k/a
PROTECTION TECHNOLOGY LOS ALAMOS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant SOC Los Alamos's ("SOC") Motion for Summary Judgment, filed November 7, 2011 [Doc. 52]. The motion is fully briefed.[1] [Doc. Nos. 53, 54, 64.[2]] After careful consideration of the pertinent law, the pleadings, and attachments, the Court concludes that summary judgment should be denied in part. The Court's reasoning follows.

---

[1] The Court is disappointed with the briefing in this case. Neither party set out a clear and concise chronology of the key events. While the Complaint supplies a detailed chronology, those allegations are not evidence. Thus, the Court was required to scour every exhibit to set out a meaningful chronology. Moreover, some of Defendant's proposed undisputed facts contain variations or misstatements, while Plaintiff often attempts to create disputed facts over immaterial matters. In addition, Plaintiff's exhibits, for the most part, consist of one-page excerpts from deposition testimony without identifying the deponent on the exhibit. Even worse, Plaintiff did not group together pages of the deposition testimony by the same deponent. For example, exhibits 3, 5, 7, 10, 15, 22 are all separate pages from Alfonso Gonzales's deposition. Some are duplicates of one another, *e.g.,* Ex. 5 and 22; Ex. 7 and 15; Ex. 6 and 16. This is not a helpful use of exhibits.

[2] SOC initially filed a reply brief consisting of 22 pages, ten pages over the limit. [Doc. 58.] At the same time, SOC filed an opposed motion to exceed the page limit of the reply. The Court granted the motion in part allowing a five-page extension. The Court considered the amended reply, filed December 29, 2011 [Doc. 64]. However, Defendant circumvented the five-page extension, in part, and violated local rules by reducing the font below the required 12-pitch. *See* D.N.M. LR-Civ 10.1 (requiring at least 12-pitch). The Court cautions against that approach in the future.

**<u>Background and Undisputed Material Facts</u>**[3]

Plaintiff Kaiwee Martinez ("Martinez") brings claims against SOC for discrimination, retaliation, and failure to reinstate in violation of the Family and Medical Leave Act ("FMLA"). She also brings claims under state law for breach of contract and breach of the implied covenant of good faith and fair dealing. [Doc. 1, attached complaint; Doc. 14.] Martinez's claims arise from her employment as a Central Alarm System Operator ("CASO") at SOC, a subcontractor to Los Alamos National Security, LLC ("LANS").  LANS is the prime contractor and operator of Los Alamos National Laboratory ("LANL").  SOC is a private security force, operating as a paramilitary organization, that protects LANL's facilities and personnel.

Martinez worked for SOC since 2005, and continues to be employed by SOC.  The pertinent time frame concerning Martinez's claims begins in about Fall, 2007, when she exercised her rights under the FMLA.  [Doc. 14, p. 3 (stipulations).]  In 2007, Martinez filed a complaint with the Department of Labor ("DOL") regarding whether she was permitted under the FMLA to use intermittent FMLA leave.  The DOL complaint was resolved in her favor, Martinez was brought back to work, and she was paid for time lost.  After resolution of the 2007 DOL complaint, Martinez repeatedly requested, and SOC repeatedly approved, all of Martinez's intermittent FMLA leave requests for Martinez's various medical conditions.

In February 2010, Martinez submitted FMLA paperwork in which her primary health care provider, Barbara Salas, CNP ("Salas"), stated that Martinez would be required to take intermittent leave for conditions that began in 2007 and that were expected to last "intermittently for 70 years." [Doc. 52, Ex. 5,  "SOC0025".] The form, supplied for FMLA leave, indicates that Martinez could

---

[3]The background facts are taken from the parties pleadings and attachments, or stipulations in the Joint Status Report.  They are undisputed unless otherwise noted.

perform her duties when at work.  Salas described other relevant medical facts, "related to the condition for which the employee seeks leave," as: "allergies/asthma, upper respiratory infections, history of urinary tract infections due to having had a total hysterectomy by 11/08[;] she will continue hormonal replacement therapy for 70 years or more." [Id.] On March 2, 2010, SOC approved Martinez's request for FMLA leave from 3/20/2010 to 3/20/2011, based on the described documentation. [Doc. 52, Ex. 5 "Designation Notice-FMLA".)  The Notice further states Martinez indicated her leave under the FMLA would be taken on an intermittent basis. [Doc. 52, Ex. 5.] The supporting documentation for the 2010-2011 FMLA leave did not specifically allege back pain or, back injury.

A LANL Occupational Medical Division ("OcMed")[4] clinic injury intake form, dated June 16, 2010, indicates Martinez complained of developing lower back pain and spasms related to her use of chairs at a multi-use work station.[5]  However, based on Dr. Scher's clinic note, dated July 8, 2010, it appears that Martinez first complained of low back pain to OcMEd and Dr. Scher on June 11, 2010. [Doc. 52, Ex. 7, Clinic Note.][6] When seen on June 11, 2010, she was given a restriction of no overtime, "make ERGO changes ASAP, and a referral for physical therapy.  Martinez was sent home from work and returned to OcMed on June 25, 2010. [Id.] Martinez clearly attributed the back pain to work-related conditions.  She believed that the pain began as early as August or September

---

[4]OcMed provides medical services for LANL employees and SOC subcontractors.  Dr. Sandra Scher is the Site Official Medical Director for SOC.  She treats LANL and SOC employees.

[5]Alfonso Gonzales, SOC HR Manager, states in his affidavit that this clinic injury intake form was Martinez's "Worker's Compensation" form completed in connection with a reported injury. [Doc. 52, Ex. A to Ex. 4.] Martinez disputes that the form indicates it is a worker's compensation form.  The form does not mention "worker's compensation."

[6]While Martinez was placed on worker's compensation as early as June 11 or 16, 2010, it is unknown why Dr. Scher's July 8, 2010 clinic note does not mention worker's compensation and implies Martinez might return to work in June.  [Doc. 52, Ex. 7.]

2009, resulting from both the use of a chair at work and overtime work.  [Doc. 52, Ex. A to Ex. 4; Ex. 7.]

OcMed filled out the June 16, 2010 clinic injury intake form. [Id.] Because Martinez's back pain was considered a work-related injury associated with work conditions, SOC believed this was a worker's compensation incident.  Thus, on June 16, 2010, SOC wrote Martinez a letter [Doc. 54, Ex. 2], stating SOC was sorry to hear of Martinez's recent work-related injury and setting out SOC's company requirements regarding its worker's compensation procedure.  At that time, Martinez neither protested nor disputed that the back pain was work-related and would be handled under worker's compensation.  The  June 16, 2010 letter indicated Martinez was to be seen by HSR-2[7] before being seen by any other doctor for the work-related condition.  The company doctors would determine if Martinez needed time off from work or could work with or without restrictions. [Id.]

Based on deposition testimony of Alfonso Gonzales ("Gonzales"), Human Resources Manager for SOC, OcMed released Martinez to work on June 25, 2010, without instructions or restrictions.  [Doc. 54, Ex. 19.]  However, she was not actually returned to work in accordance with that release. [Doc. 54, Ex. 3, Ex. 5.]  An OcMed form, dated July 2, 2010, again released Martinez to work, this time with instructions, including directions to alternate sitting, standing, and walking every 30 minutes, use ice 3 times a day, minimize bending or twisting, and use an "Ergo Desk and chair at other post."  [Doc. 54, Ex. 3, p. 56; Ex. 20.]  Martinez was not returned to work on this date, and Gonzales testified he did not know why Martinez was not returned to work on June 25 or July 2. [Doc. 54, Ex. 3.]

---

[7]Another reference to "HSR-2" indicates that HSR-2 must be a location where medical care providers are housed for LANL's OcMed department. [See Doc. 54, ¶ 6.]

Sometime around June or July 2010, Martinez contacted DOL to inform them that she was not being returned to work in accordance with the releases.  The DOL representative contacted Gonzales to ask why Martinez was not returned to work.  Gonzales stated he told DOL that Martinez was not returned to work based on her restrictions that were associated with a work-related injury. Yet, it is not clear who made the decision that Martinez's injury should be covered by worker's compensation or the exact date of that decision. [Doc. 54, Ex. 5, p. 51.]  After Gonzales told the DOL that Martinez's injury was work-related, the DOL stated  that "in this situation the FMLA would not cover it." [Id., p. 52.]  Gonzales testified that Martinez had the work-related injury in June and was treated for it until September, 2010.

It is undisputed that Martinez was placed on paid worker's compensation from June 11 or 16 until September 17, 2010.[8] [Doc. 54, Ex. 4.]  In September 2010, there are notations that OcMed intended to initiate a fitness-for-duty exam when Martinez returned from taking several weeks off for personal business. [Id.]

Martinez never asked to be taken off workers' compensation leave between mid-June, 2010 and September 17, 2010, and did not dispute that she suffered a compensable worker's compensation injury then.  [Doc. 52, Ex. 4.] Nor did she request or otherwise have approved FMLA leave specific to work-related back pain during that time. [Doc. 52, Ex. 1, p. 68.]

On September 16, 2010, Dr. Theresa Elliott[9] opined that Martinez's back pain was not work-related and released her to Salas for further treatment.  On September 16, Salas treated Martinez and

---

[8]Martinez disputes that she was placed on "temporary total disability status" in terms of the worker's compensation leave [Doc. 54, ¶ 9], as stated by Gonzales.  Other than Gonzales's testimony, there are no supporting documents indicating Martinez was placed on "temporary total disability status" or physician's notes documenting such status.

[9]Dr. Elliott is a specialist at the Spine & Pain Institute of Santa Fe. [Doc. 52, Ex. 9.]

5

released her to work a maximum of eight hours a day.  Salas's medical note to this effect is dated September 28, 2010. [Doc. 52, Ex. 10.]  On September 28, 2010, Salas stated that she thought Martinez suffered from fibromyalgia.[10]  On September 29, 2010, Martinez reported to work but was sent home by OcMed and "not cleared back in" when she refused to sign a HIPAA release.  Later, it was determined that a misunderstanding occurred as Martinez had earlier signed a release. [Doc. 52, Ex. 6, Dr. Scher Dep., p. 56.]

Martinez did not have FMLA-approved leave or underlying medical documentation that specifically identified fibromyalgia or back pain as conditions or symptoms that warranted intermittent FMLA leave from March 2010 to March 2011. [Doc. 53, Fact Nos. 19-21.]  Martinez attempts to dispute this but the Court does not find are arguments persuasive.  (*See infra* fn. 13.)

Dr. Scher signed another clinic note, dated October 14, 2010, summarizing Martinez's medical treatment and complaints.  [Doc. 52, Ex. 11.] Because Martinez continued to be in constant pain requiring "significant pain medication, and she had been off work since June 2010 with continued pain," Dr. Scher thought it appropriate to get updated medical records before returning Martinez to work.  This note indicates that Dr. Scher was scheduled to see Martinez on September 29, but that Dr. Scher was called away for a meeting.  It was during this appointment with another provider on September 29th when Martinez refused to sign the HIPAA release.

In the October 14 clinic note, Dr. Scher also discussed the FMLA paperwork she reviewed in relation to Martinez.  Dr. Scher observed there was no mention of headaches or pain in contrast to what Martinez told Dr. Scher was a reason for the FMLA leave. [Doc. 52, Ex. 11, p. 2.] Martinez

---

[10]"Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues.  Researchers believe that fibromyalgia amplifies painful sensations by affecting the way [the] brain processes pain signals." http://www.mayoclinic.com/health/fibromyalgia/DS00079 (Jan. 3, 2012)

told Dr. Scher she wanted to get back to work as soon as possible since, by this date, she no longer received worker's compensation.  Dr. Scher wanted to obtain updated information, in regards to Martinez's "significant pain medication."  Dr. Scher then contacted Salas who believed that Martinez most likely had fibromyalgia.  Salas believed Martinez could return to work while on her pain medication with an 8-hour work restriction. [Id.]

Dr. Scher had "reliability concerns" in relation to Martinez working with classified information or in the HRP program since Dr. Scher found Martinez untruthful as to her stated reasons for her FMLA use.  Martinez told Dr. Scher on September 17, 2010, that her FMLA leave was for headaches and pain, but Dr. Scher did not find this statement consistent with the FMLA paperwork because there was no mention of either. [Id.]  Dr. Scher also found that there was nothing in the paperwork tending to show Martinez could only work 8 hours a day since all of her diagnoses were transient.

The fitness-for-duty exam notes are dated October 19, 2010. [Doc. 52, Ex. 13.] Martinez was seen by Dr. Scher for follow up and to clarify some contradictions.  Dr. Scher showed her the FMLA paperwork, noting they conflicted with what Martinez told Scher on September 17, 2010, specifically that Martinez was using FMLA leave for headaches and pain.  [Id.] The interview became argumentative, and Scher concluded it.  Dr. Scher initiated a formal fitness-for-duty evaluation, including both safety and security restrictions, until she could obtain more information.  In addition, Martinez was to have a formal interview with a psychologist, and Dr. Scher would schedule Martinez for neuropsychological testing.  The October 19 exam was deferred.  Dr. Scher imposed restrictions, including no driving on official business due to Martinez's use of a duragesic patch.  Additional restrictions included alternating sitting, standing and walking every 30 minutes due to back pain, no working with classified material/information, working no more than 8 hours

7

per day, no working with safety or security sensitive duties due to inconsistencies pending evaluation, and temporary removal from HRP duties due to inconsistencies. [Doc. 52, Ex. 13.]

Dr. Scher's instructions to SOC limiting Martinez's access to security and safety-related locations essentially amounted to a total property restriction. Given the security and safety restrictions, there were no jobs that Martinez could perform at SOC. [*See* testimony of James Lucero, Director of Business Management for SOC; Doc. 52, Ex. 2, ¶ 4.]

Martinez attempts to dispute the assertion that a total property restriction resulted from Dr. Scher's instructions. However, her argument that she could proceed to the Union offices which could be accessed by anyone at any time is unpersuasive. Martinez also disputes that the restrictions precluded her from working in other positions, arguing that an employee, with such restrictions, could still be placed on restricted duty and work at a restricted duty post. In support, Martinez attached deposition testimony by the Union's Business Agent, Robert Valencia, wherein he testified that there are union members who do not have their HRP but who are working restricted duty positions. [Doc. 52, Ex. 12, p. 29.] Martinez claims she is currently working at a restricted duty post, without an HRP, and Valencia also believed she was working on restricted duty. [Doc. 52, Ex. 12, p. 29.]

SOC argues that Valencia did not know what Martinez's restrictions were during this time frame or what restrictions OcMed determined and that Valencia was not involved in any decision-making regarding Martinez's ability to work. According to SOC, Valencia's lack of personal knowledge as to Martinez's restrictions cannot create an issue of material fact concerning Martinez's ability to work. [Doc. 64, p. 5.]

OcMed issued another form, dated November 18, 2010 ("patient instructions"), finding that Martinez could return to work with instructions, including to alternate sitting, standing, and walking

8

every 30 minutes, no overtime, no SO[11] duties (temp), "use new chair at . . . (illegible)." [Doc. 52, Ex. 20, 2nd page.] Martinez relies on deposition testimony by Michael Sisneros, Labor Relations Manager,[Doc. 52, Ex. 11] that a memo to this effect was sent to Gonzales but Martinez's counsel argued that the memo (in contrast to the patient instructions) did not limit Martinez's ability to work SO duties.[12]  Sisneros admitted that Martinez was not returned to work on November 18, 2010, but stated it was due to a "site-wide restriction on her . . . ." [Id.]

Jacqueline Leeches, the Fitness-for-Duty Case Manager, testified that while Martinez was found to be fit for duty on November 18, 2010, Leeches did not notify the HRP office of this fact until February 3, 2011, based on Leeches's "oversight" or mistake.  [Doc. 54, Ex. 14.]

By March 7, 2011 [Doc. 52, Ex. 14], psychologist Evelyn Kennedy had conducted the psychological evaluation and certified Martinez for HRP duties.  The issues relating to the HRP temporary removal of Martinez were resolved.  Dr. Scher and others cleared Martinez to resume all HRP duties.  Sisneros testified that even though Martinez was cleared to work March 7, 2011, she was not returned to work until the "June and July time frame [2011]." [Doc. 54, Ex. 11, p. 104.] Sisneros did not know why Martinez was not returned to work earlier than June or July, 2011. [Id.]

On July 29, 2011, there is additional paperwork for certification of a serious health condition under the FMLA, filled out by Salas in relation to Martinez.  The diagnoses were "hormonal therapy due to total hysterectomy, low back pain/back pain, fibromyalgia +ANA, asthmatic bronchitis, headache, abnormal weight loss/nausea, work related stress anxiety/harassment, rectal bleeding, 7/10 MRI volume and fatty atrophy of the paraspinal muscles." [Doc. 52, Ex. B to Ex. 4.]

---

[11] The Court does not know if "SO" indicates "system operator" or something else.

[12] Martinez did not attach the memo to the briefing.  Thus, it cannot be reviewed.

Based on the Court's attempt to decipher the record evidence, it appears that Martinez did not work from about mid-June 2010 until July 2011, about nine months after worker's compensation payments ceased in mid-September 2010.  Her return to work in July 2011 occurred subsequent to a number of releases to work and also postdates this lawsuit, that Martinez filed on February 15, 2011. [Doc. 1, attachments.]

Martinez claims, *inter alia,* that as a result of filing the successful 2007 DOL complaint, requesting FMLA leave in 2007, and requesting FMLA leave in 2010, SOC violated the FMLA by interfering with her FMLA rights, retaliating against her and discriminating against her.  She seeks compensatory and punitive damages.

## Analysis

## I.      LEGAL STANDARD

Summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) Fed. R. Civ. P. 56(a) and (c)(1)(A).  The Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Applied Genetics Int'l, Inc. v. First Affiliated Sec. Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

The party seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving [sic] party's case."  Muñoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000) (citation omitted). Upon meeting that burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact." Id.

The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party." Id. at 249-50.  Mere assertions, conjecture, or the existence of a scintilla of evidence in support of the non-movant's position, are not sufficient to show a genuine issue of material fact; an issue of material fact is genuine only if the non-movant presents facts such that a reasonable jury could find in favor of the non-movant.  Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006) (citations and quotations omitted).

## II.      FAMILY AND MEDICAL LEAVE ACT ("FMLA"), 29 U.S.C. §§ 2601-54

Martinez's claims that SOC failed to reinstate her to work under the approved intermittent FMLA leave and that SOC discriminated and retaliated against her, all in violation of the FMLA. The FMLA sets out the following "prohibited acts":

> (a)      Interference with rights
>
> (1) Exercise of rights
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter [of the FMLA].
>
> (2) Discrimination
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the subchapter.

29 U.S.C. § 2615(a).  An entity also cannot discriminate against an individual in any manner because that individual has filed a charge, or instituted or caused to be instituted any proceedings, under or related to the FMLA.  29 U.S.C. § 2615(b)(1).

The Tenth Circuit Court of Appeal recognizes two theories of recovery under § 2615(a): "an entitlement or interference theory arising from § 2615(a)(1), and a retaliation discrimination theory from § 2615(a)(2)." Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir.

2006).  The Circuit Court further observed that there are distinctions between the two theories for relief both as to the elements of the claims and the burdens of proof that apply.  Id.  These differences are described below in the analysis of the claims.

### A.    FMLA Interference/Entitlement Claim

Under § 2612(a)(1) and § 2614(a), the FMLA guarantees eligible employees "the substantive rights of up to twelve (12) weeks of unpaid leave" "for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave."  Id. at 1180.  *See also* Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 959 (10th Cir. 2002).  To prevail on the interference/entitlement claim, Martinez must demonstrate: "(1) that [she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights."  Metzler, 464 F.3d at 1170 (*citing* Jones v. Denver Pub. Sch., 427 F.3d 1315, 1319 (10th Cir. 2005)).

Under this theory, the employer's intent is of no import, and the McDonnell Douglas burden-shifting analysis does not apply to an interference/entitlement claim.  Id.  Nevertheless, the FMLA is not a strict liability statute.  *See* 29 U.S.C. § 2614(a)(3)(B) ("Nothing in this section shall be construed to entitle any restored employee to ... any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.")

SOC argues that there are no genuine issues of material fact with respect to each of the three elements of the interference/entitle claim, and that it, therefore, is entitled to summary judgment. Martinez asserts that she can satisfy all three elements of the claim.

### 1.    *Entitlement to FMLA Leave*

In Jones, 427 F.3d at 1319-23, the Tenth Circuit discussed the elements of an interference/entitlement claim at some length. Specifically, the Court explained that:

> [t]he FMLA entitles a qualified employee to take specified leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The statute defines "serious health condition" to mean "an illness, injury, impairment, or physical or mental condition that involves ... (B) continuing treatment by a health care provider." Id. § 2611(11). Under regulations promulgated by the Department of Labor, "continuing treatment by a health care provider" includes:
>
> A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider ...; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> 29 C.F.R. § 825.114(a)(2)(I). For purposes of the regulations, "treatment" includes both "examinations to determine if a serious health condition exists and evaluations of the condition," while a "regimen of continuing treatment" includes "a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment ... (e.g., oxygen)" but excludes regimens that consist solely of over-the-counter medications, bed rest, fluids, or exercise. Id. § 825.114(b).

Id. at 1319-20.

Martinez generally was a "qualified employee" for purposes of FMLA leave as she already was approved to use intermittent FMLA leave from March 10, 2010 to March 10, 2011. Because back pain was not specified in the underlying medical paperwork used to approve the 2010-2011 FMLA leave, the question is whether that condition is a "serious medical condition."

Based on the undisputed facts, Martinez was placed on worker's compensation leave in June 2010, for a significant period of time. Thus, she satisfies the requirement of a period of incapacity, as she did not work for about four months.

The next question is whether she obtained the required treatment for the condition, as specified by the statute. Although the parties did not address this issue at any length, the undisputed evidence is that Martinez was seen by the OcMed physician in June 2010, when she complained of lower back pain and spasms. SOC required that Martinez report to HSR-2 doctors for treatment of her condition, as of June 16, 2010. Gonzales's deposition testimony and exhibits indicate that Martinez was seen by OcMed in late June 2010, early July 2010, August 2010, and September 2010, as she was released to work at those times. [*See also* Doc. 54, Exhs. 19, 20, 21, 22; Doc. 52, Ex. 7, Ex. 8, pp. 64-65, 67, Ex. 9.] Martinez testified she was treated both by Dr. Scher and Dr. Elliott for her back and for testing. [Doc. 54, Ex. 4, pp. 22-23, 25.] Dr. Scher's October 14, 2010 clinic note [Doc. 52, Ex 11] indicates Martinez was seen by Santa Fe Nurse Practitioners on 11/23/09, with complaints of lower back pain related to a chair at work, on January 14, 2010, for complaints of back pain that was work-related, on May 18, 2010 with complaints of back pain due to the chair she used at work, and on June 21, 2010 for complaints of work-related back pain. [Doc. 54, Ex. 11.] Thus, Martinez received sufficient treatment to satisfy the regulations.[13]

SOC contends that the regulations required an employee to provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave, 29 C.F.R. § 825.302, which Martinez did not do, at

---

[13]Martinez argues that back pain could have been a symptom of some of the listed medical problems and that she was not required to spell out every possible symptom on the FMLA paperwork. This argument is not persuasive, especially in view of the seemingly unrelated problems identified in the 2010 FMLA paperwork.

least in relation to the back pain in June 2010.  However, there is no requirement in the Tenth

Circuit[14] that an employee expressly ask for FMLA leave, or even mention the FMLA.  Brown v.

ScriptPro, LLC, 2011 WL 3880855, *7-8 (D. Kan. Sept. 1, 2011) (unpublished) (citing Tate v.

Farmland Indus., Inc., 268 F.3d 989, 997 (10th Cir. 2001)).  Nonetheless, the Tenth Circuit has held

that the issue of notice is separate from the substantive analysis of an FMLA interference claim, i.e.,

it is not an additional element of the claim.  Bones, 366 F.3d at 877, n. 2.  The Court, therefore,

looks into whether a plaintiff gave a defendant sufficient notice of an FMLA request or whether a

defendant had a duty to tell the employee that he or she might qualify for FMLA leave.  See

ScriptPro, 2011 WL 3880855, *8 (discussing notice inquiry).

In Tate, 268 F.3d at 997, the Tenth Circuit noted that the defendant placed the plaintiff on

involuntary sick leave pending its review of his health status.  The Court concluded that "given

Plaintiff's allegation that Defendant placed him on sick leave, Plaintiff need not allege he provided

Defendant with notice of his rights under the FMLA."  The situation is similar to this case.  SOC

placed Martinez on worker's compensation based on her complaints about work-related back pain

or back injury.  Because all of the evidence suggests SOC made the decision to place Martinez on

worker's compensation,[15] Martinez did not need to provide notice to SOC of her rights under FMLA.

---

[14]Other Circuit Courts have held that a notice requirement is an element of the FMLA
interference claim, but that is not true in the Tenth Circuit.  Bones v. Honeywell Int'l, Inc., 366 F.3d 869,
877 n. 2 (10th Cir. 2004).

[15]Human Resource Manager Gonzales's affidavit is vague as to this question.  "Plaintiff was
placed on paid Worker's Compensation temporary total disability status until September 17, 2010, based
on information obtained from OcMed indicating that she had complained of a work-related back injury."
[Doc. 52, Ex. 4, ¶ 3.] Neither party provided any forms indicating Martinez was on "temporary total
disability status."  Gonzales claimed that Martinez filled out "Worker's Compensation forms in
connection with that reported injury," which he attached to his affidavit.  The forms he attached, however,
do not state that they relate to a worker's compensation claim. [Doc. 52, Ex. A to Ex. 4.]

Based on SOC's awareness of Martinez's health condition in June 2010 and her approved FMLA leave, even if related to other purposes, SOC had a duty to inform Martinez that she might qualify for FMLA leave.[16]  *See* Tate, 268 F.3d at 997 (If employer is on notice that employee might qualify for FMLA benefits, the employer has a duty to tell the employee that she might qualify).[17]

In viewing the evidence and drawing reasonable inferences therefrom, in the light most favorable to Martinez, as the Court must, Meiners v. Univ. of Kan., 359 F.3d 1222, 1229 (10th Cir. 2004), the Court finds genuine issues of material fact exist as to whether Martinez was entitled to FMLA leave in relation to back pain in 2010.  In addition, material disputed facts exist as to whether SOC should have informed Martinez that she might have been eligible for FMLA leave in June 2010, when it advised her of eligibility for worker's compensation.

### 2.    *Adverse Action*

With respect to the second element of the interference/entitlement claim, an "adverse action" has been characterized as a showing that the plaintiff "was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."  Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007) (*citing* Metzler, 464 F.3d at 1181) (FHLB interfered with Metzler's right to take up to 12 weeks and denied

---

[16]SOC asserts that while it could have required Martinez to use her FMLA leave concurrently with worker's compensation this would have penalized Martinez since she would have been required exhaust any available FMLA hours concurrently with paid leave. [Doc. 64, pp. 9-10.] While this may be true, had Plaintiff been placed on FMLA leave for the back injury, certain rights would have been triggered under the FMLA, *e.g.,* reinstatement to the former position or a comparable position after FMLA leave.

[17]To the extent that Martinez now argues she should not have been placed on worker's compensation, it defies logic to believe that Martinez would have chosen FMLA leave over worker's compensation leave where she received three-four months of monetary compensation.  Yet, had she elected to take FMLA leave concurrently with worker's compensation, it is unknown how that scenario might have evolved with respect to reinstatement.

her the right to be reinstated to her former position or an equivalent one upon her return to full-time work).  Martinez argues undisputed evidence demonstrates that SOC did not allow Martinez to take her approved intermittent FMLA leave during the pertinent time frame, that she was prevented from taking the full 12 weeks FMLA leave guaranteed by the FMLA, and that she was not reinstated until July 7, 2011, notwithstanding earlier releases to work.

As stated previously, OcMed notes from June 2010, document OcMed's awareness of Martinez's complaints of back pain.  Gonzales testified that he told the DOL during this time frame that Martinez was on worker's compensation.  Martinez's complaints of back pain occurred when Martinez already was approved for intermittent FMLA leave, based on other complaints.

In addition, Martinez was cleared to work on a number of occasions during 2010, and yet SOC's Human Resources Manager and others either made mistakes in notifying the appropriate departments that Martinez was cleared for work or did not know why she was not reinstated after being released to work in June, July and November 2010.  Indeed, HRP was not notified of Martinez's release to work on November 18, 2010, until three months after the fact.  SOC provides no explanation for the delay other than an "oversight."

Even though Martinez again was cleared to work and resume all HRP duties as of March 7, 2011, she was not returned to work until July 2011.  SOC provides no explanation why Martinez was not returned to work as of March 7, 2011.  SOC argues that the undisputed material facts demonstrate Martinez was not on FMLA leave from June 2010 to July 2010, so she cannot demonstrate she was denied reinstatement <u>after</u> taking FMLA leave.  This argument has some persuasive value, and yet, there is no explanation why Martinez was not allowed FMLA leave between June and July 2010, or why SOC did not alert Martinez that she might be eligible for FMLA leave, particularly in view of the fact that she was approved for intermittent FMLA leave

17

during this time period and SOC placed her on worker's compensation. The Court, therefore, finds genuine issues of material fact exist in relation to the second element of the interference/entitlement claim, and whether Martinez was denied the opportunity to take her full 12 weeks of FMLA leave.

### 3.    Causal Connection

The Court also determines genuine issues of fact exist as to whether SOC's actions or inaction as to Martinez's reinstatement to work in 2010-2011 were related to her 2010 request for FMLA leave that was approved or her complaint to DOL in 2010 that she was not returned to work, once again, after being released to work. In other words, the chronology supports the Court's finding a genuine issue of material fact. *See* DeFreitas v. Horizon Inv. Mgmt. Corp., 577 F.3d 1151, 1160 (10th Cir. 2009) (whenever termination occurs while the employee is on leave, that timing has significant probative force as to deciding the third element of an interference claim).[18]

Martinez was released to work in late June 2010. When she was not reinstated, she complained to the DOL representative, who then contacted SOC or Gonzales. After Gonzales informed DOL that Martinez suffered from a work-related injury, DOL found that FMLA leave did not apply. That did not prevent SOC from alerting Martinez that she might qualify for FMLA leave.

Martinez's interference/entitlement claim is weak, particularly in view of the uncontested fact that all of Martinez's applications for FMLA leave were repeatedly approved (after 2007). Moreover, SOC approved the 2010 FMLA request that was supported by medical documentation for conditions that occur commonly in the population, *i.e.,* asthma, allergies, hysterectomy, and

---

[18]While DeFreitas is distinguishable in that the employee was terminated while on leave, its reasoning is persuasive in this case where Martinez was not reinstated during a period of time when she was eligible for FMLA leave, when she was released to work during that time frame, and when she complained to the DOL during that period. In contrast, Martinez's argument that three-year old complaints in 2007 were related to SOC's conduct in 2010/2011 is much less persuasive.

hormonal therapy, rather than problems typically found to be "serious medical conditions."  In addition, SOC's failure to explain why it did not inform Martinez of her right to take FMLA leave while she was on worker's compensation might not equate with interference of her right.  This is true especially because Martinez knew how to request FMLA leave, had frequently done so, and had frequently received approval for leave.  Still, there are unexplained failures of SOC to return Martinez to work after she was cleared to return.  Thus, these disputes should be resolved by a factfinder.

The Court concludes that the FMLA interference/entitlement claim will proceed based on the existence of genuine issues of material fact as to all three elements.

## B.    FMLA Retaliation/Discrimination Claim

In contrast to the FMLA interference/entitlement claim, a retaliation/discrimination claim brought under the FMLA[19] is subject to the burden-shifting analysis of McDonnell Douglas.  Metzler 464 F.3d at 1170-71.  Martinez bears the initial burden of establishing that: "(1) she engaged in a protected activity; (2) SOC took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."  Id. at 1171.  If Martinez meets her burden, SOC must offer a legitimate, non-retaliatory and non-discriminatory reason for the employment action.  Id. at 1170.  Should SOC succeed, Martinez has the ultimate burden of demonstrating SOC's proffered reason is pretextual.  Id. (internal citations omitted).

---

[19]Both parties' briefing [Doc. 53, p. 12; Doc. 54, p. 17] treat the retaliation and discrimination allegations as a single claim and agree to the elements of Plaintiff's *prima facie* case.

### 1.      Protected Activity

SOC concedes that Martinez can satisfy the first element of the claim but limits the protected activity to the 2007 DOL complaint.  [Doc. 53, p. 12.] Under 29 U.S.C. § 2615(b), it is unlawful for any person to discriminate in any manner against an individual who "has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter," or "has given ... any information in connection with any inquiry or proceeding relating to any right provided under this subchapter . . . ."  Based on the statutory language, the Court concludes that Martinez's 2010 FMLA leave and 2010 communication with the DOL could satisfy the first element of the claim, or that, at a minimum, genuine factual issues exist based on these activities.

SOC argues, however, that Martinez cannot raise a genuine issue of material fact as to either of the remaining elements.

### 2.      Adverse Action

Under the "adverse employment" prong, Martinez "need only show 'that a reasonable employee would have found the challenged action materially adverse.'" Id. at 1171 (*citing* Burlington N. & Santa Fe Ry. Co. v. White, __ U.S. __, 126 S.Ct. 2405, 2414-15 (2006)).  The Tenth Circuit further explained that while this standard was initially applied in a Title VII retaliation case, it was extended to ADEA and ADA plaintiffs, and finally, to FMLA retaliation plaintiffs.  Id.

SOC identifies Martinez's allegations of adverse actions narrowly, claiming that being requested to resubmit or correct FMLA paperwork, delayed communications about FMLA paperwork, requiring Martinez to sign a release related to her 2007, and various interactions with OcMed personnel do not constitute adverse employment actions. [Doc. 53, pp. 12-13.] Moreover, to the extent that Martinez complains of actions by OcMed, SOC claims OcMed is a separate entity and therefore, any actions of OcMed cannot be attributed to SOC.

20

Martinez argues that a reasonable employee would have found a number of SOC's actions "materially adverse," including proffering a pretextual reason to deny her FMLA leave and "placing her on worker's compensation to avoid another investigation by the Department of Labor." [Doc. 54, p. 18.] Martinez also asserts that SOC's failure to reinstate her after OcMed released her to work on several occasions were adverse actions.  In addition, Martinez disagrees that OcMed is not an agent of SOC and claims that OcMed's restrictions of Martinez's access to safety or security sensitive work constitute adverse actions.

In Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1279 (10th Cir. 2010), the Tenth Circuit observed that it liberally defined the phrase "adverse employment action" with respect to Title VII and ADEA claims.

> Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a 'case-by-case approach,' examining the unique factors relevant to the situation at hand." Sanchez, 164 F.3d at 532 (citations omitted). Although we do not deem "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action," id. (quotation omitted), the prong is satisfied by a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," Hillig v. Rumsfeld, 381 F.3d 1028, 1032-33 (10th Cir.2004) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

Id.  See McCully v. American Airlines, Inc., 695 F. Supp. 2d 1225, 1251-52 (N.D. Okla. 2010) (nothing 10th Circuit's liberal treatment of adverse employment actions in context of FMLA retaliation claim, although Court did not find evidence of an adverse action under the circumstances of that case).  "Whether an action is adverse depends on the facts of each case."

The Court does not find any adverse job action relating to "pretextual reasons" to deny Martinez leave, as FMLA leave was never denied.  Moreover, placing Martinez on worker's

compensation was not an adverse action.  SOC's findings that Martinez's back pain was work-related were well supported by Martinez's complaints to health care providers at that time. Similarly, Martinez did not raise a genuine issue of material fact tending to show that SOC placed her on worker's compensation to avoid another DOL investigation.  Further, any request by SOC to submit medical verifications of conditions does not meet the test of an adverse job action, nor does SOC's mistaken request to require a HIPAA release constitute a materially adverse job action.

However, the Court determines that the failure to reinstate Martinez to her former or equivalent position until July 2011, notwithstanding three or four separate releases to work, is sufficient to raise genuine issues of material fact as to the second element of the retaliation claim. SOC failed to explain why Martinez was not returned to work on these occasions and could not explain the three-month delay in informing the proper division of the November 2010 release.  In addition, SOC did not explain the delay from March to July 2011, in reinstating Martinez.  It is undisputed that the failure to return Martinez to work from mid-September 2010 to July 2011 resulted in Martinez having no work and receiving no compensation.  *See* Mahaffie v. Potter, 434 F. Supp. 2d 1041, 1047 (D. Kan. 2006) (adverse employment action means ultimate employment decision involving compensation and failure to grant leave).  *See also* Hemphill v. Sch. Dist. of Philadelphia, 2011 WL 6788806, *2 (E.D. Pa. Dec. 27, 2011) (unpublished) (in FMLA lawsuit, "[plaintiff] produced evidence to show that she suffered an adverse employment action when [employer] denied her multiple requests to return to work . . . .") (*citing* Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 766-67 (1ˢᵗ Cir. 2010) (holding that failing to restate an employee to previous position was adverse action)).

Moreover, the Court finds material facts in dispute exist as to SOC's failure to inform Martinez of possible FMLA leave when it placed her on worker's compensation leave.  Had SOC

informed Martinez she might qualify for FMLA leave and she had taken such leave, certain rights under the FMLA would have been triggered.  Because Martinez was not given that option, even though she was an eligible employee, she may have been deprived of certain rights under the FMLA.

Genuine issues of material fact exist with respect to the second prong of the FMLA retaliation/discrimination claim.

### 3.      *Causal Connection*

The Court also finds genuine issues of material fact exist as to the possible causal connection between Martinez's 2007 FMLA leave, her continuing requests for and receipt of intermittent leave under the FMLA, the 2007 complaint with the DOL, the 2010 FMLA leave request and approval and the 2010 complaint or report to the DOL as they may relate to SOC's unexplained failure to return Martinez to work on a number of occasions in 2010 and early 2011, after she was released to work.  There is temporal proximity between Martinez's 2010 FMLA leave request and approval and her 2010 complaint to the DOL and SOC's failure to reinstate her in mid to late 2010 and early 2010.  Thus, Martinez provided sufficient evidence to raise genuine issues of material fact regarding her *prima facie* case of FMLA retaliation/discrimination.

SOC must then articulate legitimate reasons for its failure to reinstate Martinez in accordance with the various releases to work in 2010 and 2011.  SOC provides explanations for placing Martinez on Compensation and also argues it could not return Martinez to work in the Fall of 2010 because of security and safety restrictions on her ability to work.  However, SOC fails to explain why Martinez did not return to work in June or July 2011, or why it took three months to notify the appropriate department after the November 2010 release to work.  Moreover, SOC did not explain why Martinez was returned to work in July 2011 instead of March 2011, once the appropriate departments were notified of her release to work.  Gonzales, the Human Resources manager,

testified he did not know why Martinez was not returned to work, and no one could explain why the later oversight took three months to correct.

Because the Court finds that SOC did not identify legitimate, non-retaliatory or non-discriminatory reasons for its failure to reinstate Martinez, the burden does not shift to Martinez to demonstrate pretext.  This is true because SOC failed to identify any reason why Martinez was not returned to work in June or July 2011, November 2011, or March 2011.

Even assuming some of SOC's explanations for its actions or inaction sufficed, Martinez can raise a fact issue of pretext by presenting evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's reasons for its action, such that a reasonable fact finder could rationally find the reasons unworthy of credence.  Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007).  SOC's lack of specificity with respect to the timing of the decision to place Martinez on worker's compensation and the DOL's inquiry why Martinez was not returned to work, along with the total failure to explain why Martinez was not returned to work in accordance with OcMed instructions demonstrate weaknesses and implausibilities in SOC's explanations.

Moreover, when asked why Martinez was not returned to work as of March 7, 2011 and why it took from that date until July 2011 to return her to work, the response was "I don't [know.]" [Doc. 64, Ex. 2, p. 104.] Although the testimony was that SOC was "starting to work on getting [Martinez] back to work once we received the [3/7/2010] notification, it took three months to accomplish the return work.  There was no explanation for such a significant delay.

For all of these reasons, the Court determines summary judgment should be denied as to Martinez's retaliation/discrimination claim brought under the FMLA.

III.    STATE LAW CLAIMS

Martinez's complaint asserts two state law claims against SOC: (1) breach of contract; and (2) breach of implied covenant of good faith and fair dealing. [Doc. 1, attached Complaint, Counts III and IV.] The breach of contract claim appears to be premised on a "detailed Labor Agreement" between SOC and the Union,[20] that sets forth the "restricted duty and medical disability programs to be applied to employees of SOC . . . ." and unidentified "policies and procedures" of SOC an the Union. [Id., Count III, ¶ 56.] Martinez's complaint alleges that she formed a "reasonable expectation" as to "expected conduct in how SOC and the Union handled medical concerns of employees and that an implied contract was created between her and the original two Defendants. Martinez also alleges that SOC failed to provide her with a restricted duty assignment or an accommodation, or in the alternative, to grant her "medical disability."

The breach of implied covenant of good faith and fair dealing claim is vague.  Martinez alleges that New Mexico courts have "in proper circumstances" found a covenant of good faith and fair dealing exists in "contract matters," and that Defendants' "wrongful acts" deprived her from enjoying the benefits of the contract. [Id., Count IV, ¶ 59.]

SOC argues first that summary judgment should be granted on the two state law claims because § 301 of the Labor Management Relations Act of 1947 ("LMRA") preempts those claims and then that the undisputed material facts demonstrate the two claims fail as a matter of law.

Martinez argues, in part, that SOC was contractually obligated to place her in a restricted duty position and that its failure to do so was a breach of contract.  In support of the breach of

---

[20]Martinez's complaint originally asserted claims against both SOC and the Union, but on October 21, 2011, the parties jointly moved to dismiss the Union, and the Union was dismissed in an Order, entered October 24, 2011. [Doc. Nos. 48, 49.]

contract claim, Martinez contends that portions of the Collective Bargaining Agreement, while "not

a contract between employer and employee," obligated SOC to provide certain benefits, including

an accommodation or placement on medical disability. [Doc. 54, p. 23.] Martinez relies on the same

reasons to support the implied covenant of good faith and fair dealing claim and asserts she provided

material facts demonstrating SOC acted in bad faith when it submitted Martinez for a fitness for

duty examination.   Martinez asserts that she supplied evidence showing SOC intentionally and in

bad faith deprived her of her rights under SOC policy and the Collective Bargaining Agreement.

[Doc. 54, p. 24.]

### A.    PREEMPTION OF STATE LAW CLAIMS

In Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 & n. 4, 108 S.Ct. 1877

(1988), the Supreme Court held that state law claims dependent upon or determined by reference

to a [Collective Bargaining Agreement] ("CBA") are preempted by § 301 of the LMRA.  In Cisneros

v. ABC Rail Corp., 217 F.3d 1299, 1302 (10th Cir. 2000), the Tenth Circuit explained:

> The Supreme Court has further elaborated that "[s]ection 301 governs
> claims founded directly on rights created by collective-bargaining
> agreements, and also claims 'substantially dependent on analysis of
> a collective-bargaining agreement.'"   Caterpillar, 482 U.S. at 394,
> 107 S.Ct. 2425 (quoting Electrical Workers v. Hechler, 481 U.S. 851,
> 859 n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)) (further citation
> omitted). Therefore, § 301 preempts "questions relating to what the
> parties to a labor agreement agreed, and what legal consequences
> were intended to flow from breaches of that agreement, ... whether
> such questions arise in the context of a suit for breach of contract or
> in a suit alleging liability in tort."

To the extent that Martinez's state law claims rely on or refer to provisions of the CBA, the

Court concludes that those claims are dismissed based on preemption.  While Martinez does not rely

solely on provisions of the CBA to support her state law contract claims, she identified various

provisions of that contract that she argues compelled SOC to provide certain rights she did not

receive.  The Tenth Circuit makes clear that if a claim relies on an alleged breach of a union

contract, it is preempted by § 301 of the LMRA.  "To the extent that the claim is based on an alleged

breach of the CBA, the claim is clearly preempted."  Garley v. Sandia Corp., 236 F.3d 1200, 1215

(10th Cir. 2001) (internal citation omitted).

Because Martinez alleges that she relied on other patterns or practices or policies in support

of her contract claims, the Court proceeds to address the elements of those claims.  However, any

claims that rely on or refer to the CBA are dismissed based on FMLA preemption.

**B.     IMPLIED CONTRACT CLAIM**

Martinez's implied contract claim alleges that SOC failed to provide her with a restricted

duty assignment, to provide her an accommodation, or, in the alternative to grant her medical

disability. [Doc. 1, Complaint, ¶ 57.] She further contends that she "formed a reasonable expectation

as to the degree and nature of any expected conduct; thus an implied contract was created between

Plaintiff and Defendants." [Id., ¶ 56.] Other than provisions of the CBA, Martinez only summarily

argues "SOC's . . . policies and procedures" to support an implied contract claim.  She fails to

identify any specific policies and procedures of SOC that SOC allegedly violated.

In order to raise genuine issues of material fact as to an implied contract claim, a plaintiff

must provide evidence, for example, of an employer's "words or conduct" that "support a reasonable

expectation on the part of employees" that they will be treated in a certain manner.  See, e.g., West

v. Washington Tru Solutions, LLC, 147 N.M. 424, 426, 224 P.3d 651 (Ct. App.) (discussing "at

will" employment and termination decision as to implied contract claim), cert. denied, 147 N.M. 464

(2009).  In evaluating an employee's expectation based on an employer's words or conduct, the

plaintiff's evidence  must meet "a certain threshold of objectivity."  Id. (internal citations omitted).

27

Here, Martinez fails to identify any specific SOC policies, procedures, practices, or "words or conduct" that might tend to support an implied contractual promise that she was entitled to a certain job assignment, accommodation of some sort, or "medical disability." Indeed, she presented no undisputed material facts to demonstrate she requested assignments or accommodations that were denied. Because the Court determines no genuine issues of material fact exist as to an implied contract claim, summary judgment will be granted in favor of SOC.

C.    **COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM**

In Henning v. Rounds, 142 N.M. 803, 808, 171 P.3d 317 (Ct. App. 2007), the New Mexico Court of Appeals discussed and rejected an alleged breach of implied covenant of good faith and fair dealing claim. The Court stated:

> "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Watson Truck & Supply Co. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990). "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994) (citation omitted).

Here, it is unclear from the Complaint or the pleadings what contract existed, implied or express, that might have been breached by SOC. The Court already determined Martinez failed to raise a genuine issue of material fact as to the existence of an implied contract to accommodate her in some specific fashion. To the extent that this claim hinges on the above-rejected implied contract claim, it, too, must fail. Martinez failed to establish the existence of an implied contract that was breached.

As stated *supra*, the covenant of good faith and fair dealing "requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." Id. In the present case, without the demonstration of an implied contract, Martinez cannot show that SOC acted in bad faith to frustrate receipt of actual benefits of a nonexistent implied contract.

Her summary allegations that an implied contract existed between herself and SOC based on an unspecified "course of conduct and dealing between SOC and the Union" and conclusory allegations that SOC acted in bad faith to "intentionally deprive her of her rights" under unidentified "SOC policy" fail to raise genuine issues of material fact. *See* Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010) ("Unsupported conclusory allegations do not create a genuine issue of fact.")

For all of the above-stated reasons, Martinez's state law claims are subject to dismissal and will be dismissed, with prejudice, either on grounds of federal law preemption or because she failed to raise genuine issues of material fact as to the requisite elements of the claims.

## Conclusion

For purposes of clarity, the FMLA claims survive summary judgment almost solely because there appear to be disputed material facts as to whether Martinez suffered an adverse job action by virtue of the delay in reinstatement. Thus, the core question that went unanswered in the briefing concerns the reasons Martinez was not reinstated after a number of releases to work. Martinez should not interpret the denial of summary judgment as to the FMLA claims to mean her claims are strong. For reasons stated throughout this opinion, the claims lack strong evidentiary support.

IT IS THEREFORE ORDERED that Defendant SOC's Motion for Summary Judgment is DENIED with respect to the FMLA claims that will proceed to trial[21] and is GRANTED with respect to the state law claims which are dismissed, with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

---

[21]The parties may wish to consider whether additional settlement negotiations before Magistrate Judge Vidmar would be fruitful, particularly in view of the rulings that significantly limit the scope of this case and the fact that the FMLA does not authorize an award of punitive damages. *See* Saavedra v. Lowe's Home Centers, Inc., 748 F.Supp.2d 1273, 1296-97 (D.N.M. 2010) (*relying on* cases where courts have consistently refused to award FMLA recovery for punitive damages).